IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ERIKA J. FRANKS                                                                                       PLAINTIFF

v.                                         Civil No. 13-2107

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                                               DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Erika J. Franks, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") and supplemental security income under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background**

Plaintiff applied for DIB and SSI on March 29, 2011. (Tr. 78.) Plaintiff alleged an onset date of March 29, 2006 due to "knee problems."(Tr. 78, 284.) Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested an administrative hearing, which was held on April 23, 2013 in front of Administrative Law Judge ("ALJ") Glenn Neal. Plaintiff was present to testify and was represented by counsel. The ALJ also heard testimony from Vocational Expert ("VE") Patty Kent. (Tr. 96.) At the hearing, Plaintiff's onset date was amended to January 1, 2010. (Tr. 100.)

At the time of the administrative hearing, Plaintiff was 25 years old, and possessed a high school diploma. (Tr. 100.) The Plaintiff had past relevant work experience ("PRW") of psychiatric aide and material handler. (Tr. 86.).

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

AO72A
(Rev. 8/82)

On June 7, 2012, the ALJ concluded that Plaintiff suffered from the following severe impairments: osteoarthritis of the left knee, obesity, borderline intellectual functioning, and major depressive disorder. (Tr. 80.) The ALJ found that Plaintiff maintained the residual functional capacity to perform "less than the full range of sedentary work." He found she was capable of lifting and carrying ten pounds occasionally and less than ten pounds frequently; that she could stand and walk for two hours and sit for six hours out of an eight-hour workday; that she was limited to only occasional climbing of ramps and stairs; that she can never climb ladders, ropes and scaffold; that she is limited to only occasional operation of foot controls with the left lower extremity. Regarding nonexertional capacity, the ALJ found that Plaintiff was limited to work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and use of little judgment; and the supervision required is simple, direct, and concrete.

With the assistance of the VE, the ALJ determined that the Plaintiff could perform such representative occupations as bench hand/clock and watch, production assembly worker/eyeglass frame polisher, and hand packer at the sedentary level. (Tr. 87-88.)

Plaintiff requested a review by the Appeals Council on June 15, 2012. (Tr. 95.) While that reveiw was pending, Plaintiff submitted three sets of additional evidence. (Tr. 6, 31, 41.) The Appeals Council declined review on March 19, 2013 because the new evidence she submitted was dated after the date of the ALJ's decision on June 7, 2012. (Tr. 1.) However, the Appeals Council advised her that she could use the evidence to file a new claim for a disability using the date of her request for review as her new onset date. (Tr. 1.)

## II.     Applicable Law

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the

AO72A
(Rev. 8/82)

Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the

3

AO72A
(Rev. 8/82)

plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

### III. Discussion

Plaintiff raises two issues on appeal: 1) the ALJ erred by failing to follow the *Polaski* credibility standard; 2) the ALJ erred by improperly weighing medical source opinion in reaching the Overall RFC. (Pl's Br. 11, 16-17; Def.'s Br. 1.) Because we agree that the ALJ's failure to either discuss or assign any weight to Plaintiff's treating orthopedic specialist was error, and additionally find a remand necessary for other reasons, we will not address the *Polaski* credibility issue.[2]

### A. Improper Treatment of Treating Specialist Opinion

Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding. 20 C.F.R. § 404.1527(c)(2). Indeed, when the treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. *Id*. Further, "[g]reater weight is generally given to the opinion of a specialist about medical issues in the area of specialty, than to the opinion of a non-specialist." *Brown v. Astrue,* 611 F.3d 941, 953 (8th Cir. 2010). Thus, a treating specialist's opinion is entitled to the highest deference by the ALJ as long as the opinion topic concerns his or her speciality and is not seriously flawed in some way. *See e.g. Brown*, 611 F.3d at 953 (ALJ did not err in giving greater weight to claimant's treating psychiatrist over that of claimant's treating primary care physician on topic of mental health); *Hinchey v. Shalala*, 29 F.3d 428, 431-32 (8th Cir. 1998)(ALJ did not err in giving greater weight to claimant's treating cardiologist over that of claimant's treating family practitioner on topic of cardiac condition). Therefore, when assigning weight to the opinion of a treating specialist, it is even more critical

---

[2]This failure to discuss the merits of the *Polaski* credibility analysis argument should not be interpreted as support of either the ALJ's selective treatment of the facts of Plaintiff's activities of daily living, or his selective use of a small portion of Dr. Heim's findings to discredit Plaintiff's subjective allegations of pain.

4

than usual that "[w]hether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting." *Holmstrom v. Massanari*, 270 F.3d 715, 720 (8th Cir. 2001).

In this case, Plaintiff worked with a treating orthopedic specialist for her left knee issues. The first record in the transcript from Dr. Heim in the Cooper Clinic Department of Orthopedics is October 19, 2005, when Plaintiff presented to him with continued swelling in the left knee with florid synovitis. (Tr. 428.) In this record, Dr. Heim makes reference to past examination and treatment of Plaintiff, such as two scopes of the knee and a synovectomy. (Tr. 428.) He noted that "she does well for a while, but then [the swelling, fluid and pain] recurs." (Tr. 428, 429.) The x-rays showed joint effusion, there were no recent injuries, and her "knee was stable in all planes." He intended that she see a rheumatologist and ordered a sedimentation rate for the knee. (Tr. 428.) The last knee scope prior to this examination was July 8, 2004. (Tr. 429.) He prescribed a medrol dose pak. (Tr. 430.) There is a notation that "Appt w Dr. Branum - not taking new medicaid." (Tr. 430.)

An x-ray of the knee ordered by Dr. Heim on July 13, 2011 showed "spurring at the patellofemoral articulation" and "knee joint effusion." (Tr. 432.)

The ALJ's only reference to Dr. Heim was to acknowledge him as a treating physician, and to use his comment that the knee joint was stable in all planes to discredit Plaintiff's subjective allegation of pain in the knee. (Tr. 83.) He did not discuss Dr. Heim's other findings. He did not assign a weight to Dr. Heim's opinions. He did not provide any reasons for the lack of discussion or the failure to assign any weight. Because Dr. Heim is a treating specialist, this requires remand.

**B.     No Physical RFC Remaining**

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace.""An administrative

5

law judge may not draw upon his own inferences from medical reports."*Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004.)

In this case, there was one Physical RFC in the record. This RFC was completed by nonexamining Agency physician Dr. Bill Payne on August 6, 2011. (Tr. 473.) This RFC diagnosed degenerative joint disease of the left knee. Dr. Payne assessed none of the postural limitations that might typically be expected for someone with a chronic knee disease, such as limitations for kneeling, crouching, or crawling. Dr. Payne assigned a Light RFC. (Tr. 466-73.) The ALJ correctly gave this opinion "little weight." (Tr. 86.)

Unfortunately, there are is no other medical evidence which directly assesses Plaintiff's physical ability to function in the workplace. Therefore, a remand is necessary.

D.  **New and Material Evidence**

Reviewing courts have the authority to order the Commissioner to consider additional evidence but "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Woolf v. Shalala*, 3 F.3d 1210 (8th Cir. 1993); *Chandler v. Secretary of Health and Human Servs.,* 722 F.2d 369, 371 (8th Cir. 1983). "To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Commissioner's determination." *Woolf,* 3 F.3d at 1215.
"The timing of an examination is not dispositive of whether evidence is material; medical evidence obtained after an ALJ decision is material if it relates to the claimant's condition on or before the date of the ALJ's decision." *Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2000.) (additional medical evidence about claimant's mental condition and dated six months after the ALJ's decision related to conditions that existed during the relevant period).

6

In this case, Plaintiff submitted three sets of evidence to the AC after the ALJ's decision was rendered. One set of records was from Western Arkansas Counseling and Guidance Center ("WACGC") from February 20, 2012. (Tr. 41-64.) Another set was from Sparks Medical Foundation ("SPMF") and covered dates from November 2012 to December 2012. (Tr. 65-74.) The third set was a letter and supporting documents from Plaintiff's attorney concerning a new diagnosis and surgery for Plaintiff's left knee. (Tr. 31-40.)

The WACGC records indicated a diagnosis of:

| | |
|---|---|
| Axis 1: | Major Depressive Disorder, recurrent, moderate |
| Axis II: | Deferred |
| Axis III: | Chronic fatigue, insomnia, significant weight gain, overweight, chronic pain, frequent or severe headaches, speech/language/hearing disorder, seasonal allergies/hay fever, menstrual problems, depression, feeling as though brain were racing |
| Axis IV: | Problems with primary support group, other psychosocial and environmental problems, problems related to the social environment |
| Axis V: | Moderate symptoms |

(Tr. 10.)

Plaintiff presented at SPMF for several physical complaints, including knee pain and dysuria. (Tr. 66-74.) An x-ray of the left knee on November 7, 2012 was compared to the x-ray from June 13, 2011. The comparison yielded the following result: "Degenerative arthritic changes around the knee are again evident. There is also persistent or recurrent knee joint effusion. There is no evidence of acute fracture or dislocation." (Tr. 74.) Impression was "Degenerative arthritis. Knee joint effusion." (Tr. 74.)

Plaintiff's attorney submitted a letter on February 11, 2013 indicating that Plaintiff had just had surgery at UAMS in Little Rock, had received a definitive diagnosis of Pigmented Villonodular Synovitis, and was scheduled for more surgery in May 2013. He included printed web pages from BONETUMOR.ORG, FamilyDoctor.org, and The Knee and Shoulder Centers to explain the significance of the diagnosis. (Tr. 31-33.) He indicated that the medical records from UAMS reflecting her recent surgery and diagnosis would follow shortly. These records did not appear in the official transcript, but were

7

attached to Plaintiff's Brief .No reason was given by either party as to why these records from UAMS were not in the official transcript. The AC decision was dated March 19, 2013, suggesting that perhaps timing was an issue. (Tr. 1.)

The new records concerning Plainitff's knee begin on November 29, 2012 with an MRI result for the left knee. The impression for this MRI indicated hemarthorsis, etiology unclear. "I cannot exclude pigmented villonodular synovitis." "Multiseptated Baker's cyst of large size, about 10 X 3.4 cm in its greatest dimensions. (ECF No. 13:48.) Plaintiff returned for a followup exam with Dr. Rhomberg of Sparks Orthopedic Clinic on December 3, 2012. Dr. Rhomberg noted he had ordered the MRI in an earlier exam due to Plaintiff's history of chronic knee pain and joint effusion, and the fact that arthroscopic examination and a consultation with a rheumatologist had produced " no apparent diagnosis." His diagnosis was Pigmented Villonodular Synovitis ("PVNS") of the knee. He referred her to Dr. Nicholas, a faculty member in the UAMS Orthopedic Oncology Department. (ECF No. 13:49. )

Plaintiff was seen by Dr. Nicholas on January 4, 2013. After ordering and examining new x-rays, reviewing her past MRI and other medical records, and examining her, he confirmed the probable diagnosis of PVNS. He "discussed the natural history of the disease and given the fact that she has waited 6 or 7 years to have any further workup on this it is likely that the PVNS has become quite significant and it is going to be very difficult to deal with . . . ." He recommended that she undergo surgery to have an open biopsy which would be reviewed by a pathologist. If it was PVNS, then they would attempt a complete synovectomy at that time. ( ECF No. 13:56)

Plaintiff underwent surgery on January 14, 2013. The soft tissue mass in her knee was biopsied, and PVNS, with no evidence of malignancy, was confirmed. An "[e]xtended knee arthrotomy with anterior synovectomy" was performed. (ECF No. 13:68.) The surgery summary description included "extensive thickening and scarring throughout the soft tissue." and "dense adhesion to the femur." (ECF No. 13:69.)

Plaintiff saw Dr. Nicholas on February 1, 2013 for a post-operative exam. In his summary of the examination, Dr. Nicholas characterized her surgery as "an extended anterior knee arthrotomy and synovectomy for massive synovitis of the left knee. . . Final pathology pigmented villonodular synovitis (no evidence of malignant process). The patient has a longstanding history of swollen knee (over 7 years)." (ECF No. 13:71.) The assessment and plan indicated a return appointnment in three months. He indicated that another synovectonmy for the posterior would likely be scheduled sometime this late fall or early summer. (ECF No. 13:71.)

The medical evidence from Sparks and UAMS concerning Plaintiff's knee is is clearly new, relevant, probative of the claimant's condition for the time period for which benefits were denied, and there is a reasonable likelihood that it would have changed the Commissioner's determination. It is new and relevant in that it provides, for the first time, a definitive diagnosis for Plaintiff's previously unexplained or misdiagnosed left knee pain and swelling. It is probative of the Plaintiff's condition for the relevant time period in that Dr. Nicholas stated at least twice in his records that Plaintiff's PVNS had been in progress for several years, placing the onset well before the date of the ALJ's decision six months earlier. *See e.g. Bergmann v. Apfel*, 207 F.3d 1065, 1070 (8th Cir. 2000) (evidence submitted after the ALJ's decision which outlines the "progress of deterioration" during the relevant time and "provides, for the first time, a conclusive psychiatric determination" was new and material).

Given the nature of the condition, it also likely that the new diagnosis of PVNS could change the Commissioner's determination. PVNS is one of two relatively rare tumors that affect joints. Both of these are "benign but locally aggressive." THE MERCK MANUAL, http://www.merckmanuals.com/professional/ musculoskeletal_and_connective_tissue_disorders/tumors_of_bones_and_joints/joint_tumors.html?qt= pigmented%20villonodular%20synovitis&alt=sh (accessed June 2, 2014.) Both cause joint pain and effusion. *Id.*

> Pigmented villonodular synovitis is considered neoplastic. The synovium becomes thickened and contains hemosiderin, which gives the tissue its blood-stained appearance

9

> and characteristic appearance on MRI. This tissue tends to invade adjacent bone, causing cystic destruction and damage to the cartilage. Pigmented villonodular synovitis is usually monarticular but may be polyarticular. Late management, especially after recurrence, may require total joint replacement. On rare occasions after several synovectomies, radiation therapy is sometimes used.

*Id.* At the very least, it requires further development of the record concerning Plaintiff's left knee now that there is a correct diagnosis in place.

The only real question concerning this PVNS evidence is the reason why these records were not in the official transcript. Given that neither party has provided an explanation, given the timing relative to the AC decision, and given the relevance of the evidence, this Court finds that good cause exists supporting Plaintiff's failure to present it earlier.

The medical evidence submitted from SPMF, dealing with knee pain and various minor ailments such as dysuria, does not add anything significantly different to the record. However, the repeated presentations for knee pain support the Plaintiff's later diagnosis of PVNS and the progress of the disease. Therefore, this evidence is also new and material.

The February 2012 evidence for WACGC is largely the same as that from July 2011, with identical diagnoses for Axis, I and III. However, there are some differences in the Axis IV and V diagnoses, most notably a upgrade from a severe to a moderate assessment for Axis V. (Tr. 10, 406.) These differences prevent it from being cumulative. Given that the case will be remanded for further development on Plainitff's knee issues, it is appropriate to include these records in that review as well.

Thus a remand is necessary to permit the ALJ to evaluate this evidence. On remand, the ALJ is directed to consider the above-discussed evidence, as well as any additional medical evidence that has arisen during the pendency of this appeal. Additionally, the ALJ is directed to have Dr. Nicholas, Plaintiff's treating orthopedic oncologist, complete a Physical RFC assessment. A new Mental RFC assessment should also be completed. Once all new evidence is in, the ALJ must recontact a VE with that evidence.

**IV.    Conclusion**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 3rd day of June 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)